IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

EBONY BELL,

    Plaintiff,

vs.                                No. 2:16-cv-02311-JTF-dkv

SHELBY COUNTY SCHOOLS,

    Defendant.

---

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

---

On May 9, 2016, the plaintiff, Ebony Bell ("Bell"), filed a
*pro se* complaint against the defendants Shelby County Schools[1]
and Chantay Branch ("Branch"), Director of Labor Relations for
SCBOE, alleging discrimination in violation of the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634,
and retaliation in violation of Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e. (ECF Nos. 1 & 2.) The case was
referred to the United States Magistrate Judge for management
and for all pretrial matters for determination and/or report and
recommendation as appropriate pursuant to Administrative Order
2013-05.

---

[1]On July 1, 2013, the Memphis City Schools system and the
Shelby County Schools system merged to form one school district,
the Shelby County Schools system. The merged system is governed
by Shelby County Board Of Education. Thus, Defendant's proper
name is "Shelby County Board of Education" ("SCBOE").

On May 11, 2016, the age discrimination claim against SCBOE was dismissed. (ECF No. 8.) Additionally, both claims against Branch were dismissed for failure to state a claim upon which relief may be granted. (*Id.*) The only claim that remains is Bell's allegation against SCBOE for retaliation in violation of Title VII. (*Id.*)

Before the court is SCBOE's April 28, 2017 motion for summary judgment, seeking judgment as a matter of law on the remaining retaliation claim. (SCBOE's Mot. for Summ. J., ECF No. 27.) Bell failed to file a response to the motion before the deadline. For the reasons set forth below, the court recommends that SCBOE's motion for summary judgment be granted and that Bell's Title VII retaliation claim be dismissed.

## I.   PROPOSED FINDINGS OF UNDISPUTED FACTS

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Rule 56(e) provides:

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:
>
> (1) give an opportunity to properly support or
> address the fact;
>
> (2) consider the fact undisputed for purposes of the
> motion;
>
> (3) grant summary judgment if the motion and
> supporting materials—including the facts considered
> undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Further, pursuant to Local Rule 56.1(d), "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." Bell has failed to file a response to SCBOE's motion for summary judgment. The court, therefore, adopts SCBOE's proposed factual findings to the extent they are properly supported by record evidence, including relevant portions of Bell's deposition and deposition exhibits. *See also Nolgen v. FedEx TechConnect, Inc.*, 971 F. Supp. 2d 694, 700 (W.D. Tenn. 2013)(holding that a *pro se* plaintiff's failure to respond to Local Rule 56.1 statement of material facts resulted in the admission of each statement of material fact); *Iqbal v. Pinnacle Airlines, Inc.*, 802 F. Supp. 2d 909, 916 (W.D. Tenn. 2011)(holding that failure to respond to Rule 56.1

statement of facts rendered those facts undisputed and warranted summary judgment in the defendant's favor).

The court therefore finds that the following facts are undisputed for the purposes of this motion for summary judgment:

Bell first started working for SCBOE's Security Services Division in June 2010 as a mobile security officer.[2] (SCBOE's Statement of Undisputed Facts ¶ 1, ECF No. 27-1.) Occasionally, Bell would do "after-school detail," which included securing sporting events, dances, or other after-school activities. (*Id.* ¶ 4.) Under SCBOE's reporting and management structure for the Security Services Division, Bell was supposed to report to her direct supervisor, Ray Hopkins ("Hopkins"), who reported to his supervisor, Glenn Williams ("Williams"). (*Id.* ¶ 6.) Williams reported to Carolyn Jackson ("Director Jackson"), the director of security, who reported to Chief Jones.[3] (*Id.*) Despite this chain of command, Bell, for the most part, bypassed her direct supervisor Hopkins and instead reported to Williams. (*Id.* ¶ 7.)

On September 20, 2012, a Memphis police officer filed a complaint against Bell due to Bell's disrespectful behavior and lack of cooperation during a robbery investigation at Kate Bond Middle School. (*Id.* ¶ 14.) Hopkins later counseled Bell

---

[2]Bell was originally hired by Memphis City Schools.

[3]Chief Jones' full name was not stated in the record.

regarding this complaint. On May 14, 2013, Officer Steven Ray
Cole ("Officer Cole") drafted a memorandum addressing Bell's
excessive absences from March 15 to May 17, 2013. (*Id.* ¶ 15.)
That same memorandum by Officer Cole also addressed the issue
of Bell's habit of leaving security details early or showing up
late. (*Id.* ¶ 16.) For example, during the 2013 basketball
season, other Security Team Leaders complained that Bell was
very late for security details or left events early. (*Id.*)
Bell's excessive absences in 2013 became obvious to Hopkins,
Williams, Director Jackson, and Officer Cole, and each person
spoke with Bell regarding these concerns. (*Id.*)

In her 2014 annual employment evaluation, Bell's
performance was rated "merely satisfactory" due to problems of
leaving work assignments early and not being in her assigned
locations. (*Id.* ¶ 17.) In August 2014, shortly after the
performance review, Bell was relieved of her assignment at Ida
B. Wells Academy after disrespectfully speaking to the
principal, who merely asked Bell about her tardiness. (*Id.* ¶
18.) Director Jackson informed Bell that her actions were
unprofessional. (*Id.*)

Also in August 2014, Officer Cole sent an email to all
SCBOE security officers regarding overtime, specifically that
no personal vehicles can be driven and that officers must ride
together. (*Id.* ¶ 19.) Contrary to that email, Bell twice

drove her personal car to overtime sites, with no other officer
in the car. (*Id.*) Director Jackson was made aware of these
violations, and she accordingly issued a written reprimand to
Bell and referred Bell to Labor Relations. (*Id.* ¶ 20.) Bell
then met with Labor Relations Advisor Ramone Lloyd ("Lloyd") to
discuss the unprofessional August 2014 incident at Ida B. Wells
Academy, as well as general performance concerns regarding
Bell's work and disciplinary history. (*Id.* ¶¶ 21-23, 25.)
Bell secretly recorded this meeting without Lloyd's consent.
(*Id.* ¶ 24.) During this meeting, Bell inquired about filing a
complaint due to hostile work environment and sexual
harassment. (*Id.* ¶ 26.)

On or around September 16, 2014, after her meeting with
Lloyd, Bell submitted a Department of Labor Relations Complaint
Questionnaire, alleging sexual harassment and hostile work
environment. (*Id.* ¶ 30.) In the complaint, Bell identified
Williams and Hopkins as the "perpetrators of sexual harassment
and/or discriminatory actions," which she alleged began in 2011
or 2012. (*Id.* ¶¶ 31, 33.) Bell identified no witnesses to her
sexual harassment allegations and did not identify anyone who
was treated differently than her under same or similar
circumstances. (*Id.* ¶¶ 32, 35.) After filing this complaint,
Bell attended three meetings to discuss her claims: the first
meeting with Lloyd; the second meeting with Lloyd and Mr.

Woods;[4] and the last meeting with Mr. Woods, Lloyd, Branch, and Director Jackson. (*Id.* ¶¶ 36-37.)

The final incident before Bell's termination occurred on September 19, 2014. Bell was assigned to perform audits of Homeland Security equipment in schools alongside other officers. (*Id.* ¶ 38.) Bell knew that officers were supposed to ride "two-man" with their assigned partners to perform the audits, but Bell chose to not ride with her partner. (*Id.* ¶¶ 39-41.) Director Jackson was informed that Bell did not ride with her assigned partner, and then proceeded to meet with Bell. (*Id.* ¶ 43.) Director Jackson told Bell to write a statement and to take off her gun belt. (*Id.* ¶ 44.) Bell was then taken to Labor Relations, where she was told that SCBOE was going to terminate her employment due to poor job performance. (*Id.*)

Bell's employment was officially terminated on September 19, 2014. (*Id.* ¶ 45.) SCBOE explained to Bell that she was being terminated because her job performance was poor, as evidenced by her repeated violations of the Security Services Standard Operating Procedure ("SOP"), including Directive Rules ("DR"), as discussed *infra*.[5] (*Id.* ¶ 45.) Bell contrastingly

---

[4]Mr. Woods' full name was not stated in the record.

[5]Throughout her tenure at SCBOE, Bell was familiar with the SOP, including the DRs. (*Id.* ¶ 9.) Specifically, Bell knew that she was always required to conduct herself in a professional manner, that she needed to be able to respond to

maintains that she was terminated because of her complaint against Williams and Hopkins for sexual harassment and hostile work environment. (*Id.* ¶ 47.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993); *Osborn v. Ashland Cnty. Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).   The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case.   *LaPointe*, 8 F.3d at 378.   This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to

---

calls for any type of services on school property, and that she needed to maintain high visibility throughout the school. (*Id.* ¶¶ 10-12.)

demonstrate that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at

378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

Bell has not responded to SCBOE's motion for summary judgment. The failure to respond to a motion for summary judgment inevitably tends to hinder a plaintiff's ability to avoid summary judgment as the plaintiff will not have set forth any affidavits or other materials pointing to specific facts to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1).

B.   Bell's Title VII Retaliation Claim

Bell argues that because she filed a complaint against Williams and Hopkins alleging sexual harassment and hostile work environment, SCBOE retaliated against her by terminating her employment. (Bell's Compl. 1-3, ECF 1.) SCBOE maintains that it is entitled to summary judgment on Bell's retaliation claim because Bell cannot establish a *prima facie* case of retaliation under Title VII and because she was terminated for the legitimate, nondiscriminatory reason of repeated policy violations. (SCBOE Mot. for Summ. J. 12, ECF 27.)

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2. Title VII also contains an anti-retaliation provision,

which provides that "[i]t shall be an unlawful employment
practice for an employer to discriminate against any of his
employees . . . because [the employee] has opposed any practice
made an unlawful employment practice by this subchapter." 42
U.S.C. § 2000e-3(a). A retaliation claim can be established
through either direct evidence or circumstantial evidence.
*Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir.
2010)(citation omitted). Direct evidence "requires the
conclusion that unlawful retaliation was a motivating factor in
the employer's action." *Id.* When the plaintiff offers no
direct evidence, but instead offers circumstantial evidence, the
retaliation claim is governed by the burden-shifting framework
set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792
(1973), and later modified by *Texas Dep't of Community Affairs
v. Burdine*, 450 U.S. 248, 252-53 (1981). *See also Abbott v.
Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)(explaining
that the same prongs for a Title VII discrimination claim are
used for a Title VII retaliation claim). Here, Bell has offered
no direct evidence regarding retaliation, so her retaliation
claim will be examined using the *McDonnell Douglas* burden-
shifting test.

Under the *McDonnell Douglas* framework, the plaintiff has
the burden of proving a *prima facie* case by a preponderance of
the evidence. *Burdine*, 450 U.S. at 252. If the plaintiff

succeeds in proving the *prima facie* case, the burden shifts to the defendant "'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine, 450 U.S. at* 253 (citation omitted).   If the defendant successfully rebuts the plaintiff's assertions of discrimination, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reasons given by the defendant were not true, but rather "a pretext for discrimination." *Id.*   However, the ultimate burden of persuasion remains with the plaintiff at all times. *Id.*

    1.   *Bell's* Prima Facie *Case*

    To establish a *prima facie* case of retaliation under Title VII, Bell must demonstrate that: (1) she acted in a manner protected by Title VII; (2) SCBOE knew of this exercise of protected activity; (3) SCBOE subsequently took a materially adverse action against Bell; and (4) the adverse action had a causal connection to the protected activity. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).   There are two types of "protected activity" for purposes of a Title VII retaliation claim: (1) "oppos[ing] any practice made an unlawful employment practice" by Title VII, and (2) making a charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII.   42 U.S.C. § 2000e-3(a).

"In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the demotion would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dept. of Safety*, 636 F.3d 202, 209 (6th Cir. 2010); *see also Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008)(holding that the plaintiff must offer sufficient evidence raising the inference that the protected activity was the reason for the adverse employment action in order to establish a causal connection). Evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights is one way to establish a causal connection. *Nguyen v. City of Cleveland*, 229 F.3D 559, 563 (6th Cir. 2000).

In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), the Sixth Circuit explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525; *see also Adamov v. U.S. Bank Nat'l Ass'n*, No. 16-5458, 2017 WL 902141, at *3-4 (6th Cir. 2017)(holding that a

plaintiff can satisfy the causation requirement where "an adverse employment action occurs very close in time after an employer learns of a protected activity" (citing *Montell v. Diversified Clinical Servs., Inc.*, 747 F.3d 497, 505 (6th Cir. 2014))).

While there is disagreement among the Sixth Circuit regarding the exact amount of time sufficient to establish a causal connection without other evidence, it is accepted that an adverse employment action that occurs within a few days of the protected activity is sufficient to establish a causal connection without other evidence of retaliation. *See Mickey*, 516 F.3d at 525; *Howington v. Quality Restaurant Concepts, LLC*, 298 F. App. 436, 447 (6th Cir. 2008)(holding that a two-day lapse is "one of the limited number of cases in which we can infer a causal connection even [without] other evidence of retaliation" (citation and internal quotation marks omitted)). The common reasoning behind this principle is that "in such a short period of time little other than the protected activity could motivate the retaliation." *Mallory v. Noble Corr. Inst.*, 45 F. App'x. 463, 473 (6th Cir. 2002); *see also Mickey*, 516 F.3d at 525 ("[I]f an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened

consecutively, and little other than the protected activity
could motivate the retaliation.").

Here, Bell has established the first, second, and third
prongs of her *prima facie* case of retaliation.[6] As to the fourth
prong, Bell filed her complaint on or around September 16, 2014
and SCBOE terminated her employment three days later on
September 19, 2014. (SCBOE's Statement of Undisputed Facts ¶¶
30, 45, ECF No. 27-1.) This temporal proximity is sufficiently
close in time to establish a causal connection. *See Howington,*
298 F. App'x. at 447 (holding that two days between the
protected activity and the adverse employment action is
sufficient on its own to establish a causal connection).

SCBOE argues that because Bell did not produce any
additional evidence beyond mere temporal proximity to suggest
retaliation, the causal connection has not been established.
(SCBOE's Mot. for Summ. J. 12-14, ECF 27.) However, as
discussed above, temporal proximity alone may establish a causal
connection if the protected activity and adverse employment
action occurred "very close in time." *Mickey*, 516 F.3d at 525;
*see also Adamov*, 2017 WL 902141, at *3-4 (holding that a
plaintiff can satisfy the causation requirement where "an
adverse employment action occurs very close in time after an
employer learns of a protected activity" (citing *Montell*, 747
F.3d at 505)). Because three days is sufficiently close in time

---

[6]SCBOE does not argue to the contrary.

to establish a causal connection without any additional evidence, Bell has established the fourth prong of her retaliation claim and has pled a *prima facie* case of retaliation.

2.  *SCBOE's Legitimate, Nondiscriminatory Reason for Terminating Bell*

Even though Bell sufficiently makes a *prima facie* case of retaliation, SCBOE has articulated a legitimate, nondiscriminatory reason for terminating Bell's employment. *See Burdine*, 450 U.S. at 253.  SCBOE terminated Bell for poor performance due to multiple violations.  Specifically, Bell violated DR 07: Courtesy by using profane and discourteous language and by failing to act courteously or respectfully to a police officer during an investigation at the school in September 2012.  (SCBOE's Statement of Undisputed Facts ¶¶ 13, 14, ECF No. 27-1.)  She further violated this rule by engaging in unprofessional conduct with the principal at Ida B. Wells Academy in August 2014.  (*Id.* ¶ 18.)  Bell violated DR 10: Disobedience of an Order when she twice drove her personal vehicle to an overtime detail in August 2014 and when she failed to ride with her assigned partner to perform audits in September 2014.  (*Id.* ¶¶ 13, 19, 39-41.)  Bell also violated DR 13: Punctuality and DR 22: Leaving Duty Assignment on several occasions by showing up late to security details, not being at her assignment, and leaving assignments early.  (*Id.* ¶¶ 13, 16,

17, 18.)  Additionally, multiple principals expressed difficulty locating Bell on campus and frustration with Bell's failure to maintain high visibility throughout the school, which was required of security officers.  (*Id.* ¶ 15.)   These concerns regarding DR 13 and DR 22 were addressed in her 2014 employment evaluation.  (*Id.* ¶ 17.)   Furthermore, Bell's failure to abide by the chain of command demonstrates a disobedience of regulations.  (*Id.* ¶ 17.)

These repeated violations of rules and procedure warrant the disciplinary action taken by SCBOE.  Specifically, the DRs listed in the SOP manual allow SCBOE to take disciplinary action against Bell for her repeated infractions.  According to DR 01: Compliance with Regulations, "[d]isciplinary action may be taken for, but not limited to, violations of the stated policy, rules, regulations, orders, or directives of the Security Services Division."  (*Id.* ¶ 13.)   DR 02: Penalty For Violation OF MCS Security Services Division Regulations states that "Security Services Division may take disciplinary action against a member found guilty of violating any stated policy, rule, regulation order, or directive of Security Services Division." (*Id.* ¶ 13.)

Because of the above violations, SCBOE terminated Bell's employment due to poor performance (Dep. Ex. 3, pg. 33, ECF No. 27-3), which is a "legitimate, nondiscriminatory reason for terminating a person's employment." *Imwalle v. Reliance Med.*

17

*Prod.*, 515 F.3d 531, 546 (6th Cir. 2008.)   Bell's poor performance, as supported by the undisputed facts, provided SCBOE with a legitimate, nondiscriminatory reason for terminating Bell's employment, which accordingly dispels any inference of retaliation based on temporal proximity. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013)("[A]n intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity." (citation and internal quotation marks omitted)).

3. *Pretext*

Because SCBOE has offered a legitimate, nondiscriminatory reason for terminating Bell's employment, the burden shifts to Bell to show, by a preponderance of the evidence, that SCBOE's reason for terminating her employment was a pretext for discrimination. *Burdine*, 450 U.S. at 253.   To withstand SCBOE's motion for summary judgment, Bell must "produce sufficient evidence from which a jury could reasonably reject [SCBOE's] explanation" of why it terminated her. *Wright v. Memphis Light, Gas & Water Div.*, 558 F. App'x 548, 554 (6th Cir. 2014)(internal quotation marks omitted)(quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).   Bell can establish pretext by: (1) showing that the reason has no basis in fact; (2) the reason did not actually motivate the employer's action; or (3) by showing that the reason was insufficient to motivate the action. *Manzer*

18

*v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.
1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579
F.3d 614 (6th Cir. 2009)(citation omitted).

Bell has failed to produce any evidence suggesting pretext.
First, Bell has not proved that SCBOE's proffered reason for her
termination had no basis in fact.  In order to establish that
the defendant's reason for termination has no basis in fact, the
plaintiff must produce evidence that the reasons never actually
happened, perhaps because the reasons are "factually false."
*Id.* (citation omitted).  Bell did not respond to the motion for
summary judgment and therefore Bell does not dispute any of the
factual statements regarding her violations, poor work
performance, or poor work evaluations.

Second, Bell has not proved that SCBOE's reason was not the
motivating factor behind her termination.  To show that the
reason did not actually motivate the employer's action, the
plaintiff must produce evidence to "indict the credibility of
[the] employer's explanation by showing circumstances which tend
to prove that an illegal motivation was more likely than that
offered by the defendant."  *Id.*  Bell once again offers no
evidence to the contrary.  The only slight indication of
retaliation is Bell's subjective "feeling" that because of her
complaints, she was told her job performance was poor.  (SCBOE's
Statement of Undisputed Facts ¶ 47, ECF No. 27-1.)  However,

this "feeling" does not create a material dispute of fact. Furthermore, there is no evidence suggesting that the meetings regarding Bell's complaint made her feel uncomfortable or targeted in any way.

Lastly, Bell has not produced any evidence suggesting that SCBOE's reason was insufficient to motivate her termination. To show that the reason was insufficient to motivate the action taken, the plaintiff must provide evidence that other employees, particularly ones in the protected class, were not terminated even though they engaged in "substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.* Bell never identified anyone else who had been treated differently than her.    In her court-supplied complaint form, Bell wrote "unknown" in the section regarding "Comparative Information."  (Compl. 4, ECF No. 1.)

Viewing the evidence and all inferences in the light most favorable to Bell, Bell has failed to carry her burden of establishing pretext.    There is no evidence that suggests SCBOE's application of its Directive Rules in response to Bell's repeated violations had no basis in fact, did not actually motive SCBOE's actions, or was insufficient to motivate SCBOE's action.    Therefore, SCBOE's motion for summary judgment on Bell's Title VII claim for retaliation should be granted.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that SCBOE's motion for summary judgment on Bell's Title VII retaliation claim be granted.

Respectfully submitted this 5th day of July, 2017.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  FED. R. CIV. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.